UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANE DOE,

    Plaintiff,

v.                                Case No. 8:21-cv-1576-VMC-CPT

MURRAY WILLIS and SWIFT
TRANSPORTATION CO. OF
ARIZONA, LLC,

    Defendants.
_____/

## ORDER

This matter is before the Court on consideration of Plaintiff Jane Doe's Motion for Partial Summary Judgment (Doc. # 73), filed on November 11, 2022, Defendant Swift Transportation Co. of Arizona, LLC's Motion for Partial Summary Judgment (Doc. # 86), filed on November 23, 2022, and its Daubert Motions to exclude the testimony of two of Doe's experts (Doc. ## 112, 113), filed on December 14, 2022. Swift responded to Doe's Motion on December 2, 2022. (Doc. # 104). Doe responded to Swift's Motion for Summary Judgment on December 14, 2022 (Doc. # 114), and its Daubert Motions on January 18, 2023. (Doc. ## 152, 153). Both parties replied to the summary judgment motions. (Doc. ## 117, 125). For the reasons that follow, Swift's Daubert Motions are denied,

1

Swift's Motion for Partial Summary Judgment is granted in part and denied in part, and Doe's Motion for Partial Summary Judgment is denied.

## I.   **Background**

This case stems from an incident in which Doe claims Defendant Murray Willis sexually assaulted her while both she and Murray were driving a Swift truck.

### A.   **The Parties**

Swift is a full truckload carrier that utilizes both company drivers (who Swift classifies as employees) and owner-operators (who Swift classifies as independent contractors). (Doc. # 86-2 at ¶ 3). Swift is headquartered and has its principal place of business in Phoenix, Arizona. (Id. at ¶ 2). Swift's security and recruiting departments, located in Phoenix, are responsible for submitting background checks for applicants, hiring applicants, retaining personnel documents, and coaching. (Id. at ¶ 5). Swift conducts background checks on all drivers before engaging them to drive, regardless of whether they are employees or owner-operators. (Id.). Swift may disqualify applicants based on specific hiring criteria and driver qualifications, including driving records, criminal history, drug convictions, and previous employment history. (Id. at ¶ 6).

Jane Doe is, and at all relevant times has been, a Texas resident. (Doc. # 15 at ¶ 1). Swift hired Doe as a new truck driver in September 2020. (Doc. # 109-1 at 79:11-80:9). As a truck driver, Plaintiff's primary responsibility was to deliver freight using a tractor-trailer in a safe and prompt manner consistent with Swift's policies. (Id. at 62:24-63:19; Doc. # 86-2 at ¶ 4).

Murray Willis is, and at all relevant times has been, a Georgia resident. (Doc. # 109-2 at 139:21-23). Swift employed Willis as a company driver during the following periods: November 13, 2015, to April 18, 2016; July 13, 2016 to June 9, 2017; and October 27, 2017, to November 9, 2017. (Doc. # 86-2 at ¶ 11). Swift also engaged Willis as an owner-operator from November 27, 2018, to March 1, 2021. (Id.). Swift performed a background check on Willis each time he was hired, including as an owner-operator. (Id. at ¶ 12). The November 2018 background check included a search of criminal records in Clayton County, Georgia, and returned no criminal records for Willis. (Id. at ¶ 13).

The parties disagree regarding the extent to which Doe understood that Willis was an independent contractor. During her deposition, Doe was asked whether an owner-operator is an independent contractor (Doc. # 109-1 at 188:6-8), and she

responded, "Yes, that's like a lease owner operator. It's all the same thing right? I don't know." (Id. at 188:9-11). Swift contends that this response indicates Doe knew Willis was an independent contractor, while Doe argues this indicates that she did not understand the distinction between an employee and an independent contractor.

### B.   Swift Policies and Mentor Program

Swift offers a training program that pairs new drivers with experienced drivers who act as mentors. (Id. at ¶ 7). Mentors provide feedback to new drivers. (Id. at ¶ 8). Mentors do not have authority to hire, fire, or discipline a new driver. (Id.). However, mentors do provide feedback on whether the new driver is ready to take the road examination, which is required to verify that a new driver is qualified to operate a truck alone. (Id.). Swift examiners, not mentors, administer the road examination. (Id.). New drivers may request a new mentor for many reasons, including a personality conflict, the condition of the mentor's truck, or teaching style. (Id. at ¶ 9). If a mentor and new driver disagree about whether the new driver is ready for the road examination, Swift will assign the new driver a different mentor. (Id.).

At the start of Doe's employment with Swift, Doe signed a Receipt, Safety Pledge, Arbitration Acknowledgment &

Voluntary Employee Injury Benefit Plan Enrollment Agreement ("VEI Agreement"). (Doc. # 104-1). By signing the VEI Agreement, Doe indicated that she understood that Swift did not carry worker's compensation insurance and was a nonsubscriber under Texas's worker's compensation law. (Id. at 59). As part of the VEI Agreement, Doe agreed that she would notify Swift's Safety Department within twenty-four hours after sustaining an injury on the job and acknowledged that any claim or dispute relating to an on-the-job injury would be subject to mandatory arbitration. (Doc. # 104-1 at 59-60). The VEI Agreement defines coverage under the policy and specifically excludes any injury that "arose out of an act of a third person intended to injure you because of personal reasons and not directed at you as an employee or because of your employment." (Id. at 21-22).

The VEI Agreement bars Swift from using the following defenses in a lawsuit by an employee for an injury sustained in the course of her employment: "(1) that the employee was guilty of contributory negligence; (2) that the injury or death was caused by the negligence of a fellow employee; or (3) that the employee had assumed the risk of injury or death[.]" (Id. at 59).

C.  **Incident**

When Swift hired Doe, she was placed in Swift's new driver training program. (Doc. # 109-1 at 91:13-93:23). After being assigned her first mentor, Doe requested a new mentor because she did not want to drive through the night. (Id. at 96:7-97:7). On September 27, 2020, Willis was then assigned as her new mentor. (Id. at 108:15-25, 110:8-17). Willis served as Doe's mentor until October 6, 2020, when Doe requested a new mentor, because Willis's truck needed repairs. (Id. at 110:15-111:13, 114:11-24). Doe also requested a new mentor on one occasion because she did not want a mentor who was a pet owner due to concern over dog hair in the truck. (Id. at 103:8-104:2). Each time she texted the Driver Qualification Leader to ask for a new mentor, she was quickly reassigned. (Id. at 94:25-99:12, 102:24-103:17, 113:14-116:13, 119:12-24, 134:5-21).

In her deposition, Doe testified that Willis sexually assaulted her on the night of September 29, 2020, while the two were alone in his truck at a rest stop. (Id. at 174:20-183:12). After the assault, Doe stated, that Willis told her no one would believe her and that he would "claim PTSD" if she told anyone. (Id. at 202:18-203:13).

### D.   <u>Past Complaints Against Willis</u>

In November 2010, Willis was indicted on charges of battery, false imprisonment, and kidnapping a female victim. (Doc. # 86-8). On April 15, 2011, Willis entered a "First Offender Plea" on the false imprisonment and battery charges, and the kidnapping charge was *nolle prossed*. (<u>Id.</u> at 3). He was sentenced to five years' probation. (<u>Id.</u>). On August 11, 2017, the Superior Court of Clayton County, Georgia, entered a "Petition for Discharge of Defendant (First Offender Act)" that stated Willis served his probationary period and was "discharged without court adjudication of guilt." (<u>Id.</u> at 2). Further, it stated that "this discharge may not be used to disqualify a person in any application for employment[.]" (<u>Id.</u>).

In 2016, Swift received a complaint from a female driver, J.S., asserting Willis retaliated against her. (Doc. # 110-2 at 1). After the female driver made an allegation of sexual harassment against his friend, the female driver reported that she heard Willis tell others not to mentor her. (<u>Id.</u> at 5). During Swift's investigation of that claim, Swift also interviewed a former Swift driver, L.L., who alleged Willis sexually assaulted her approximately a month earlier while he was mentoring her. (<u>Id.</u> at 7-11). Swift's human resources

team investigated both claims. (Id. at 4-5). Swift determined that it could not corroborate the allegations against Willis (Id. at 5); however, it decided to limit Willis to training only male students. (Id.). Yet, when Willis reapplied to the mentor program as an owner-operator in December 2018, Swift accepted his application and did not limit him to training only male students. (Doc. # 86-2 at ¶ 14).

### E.   **Expert Testimony**

Doe offers the testimony of Kimberly Riddle on violence against female truck drivers. (Doc. # 112-2). Dr. Riddle has a Ph.D. in nursing, with a concentration in occupational and environmental health. (Id. at 129). She also previously worked as a sexual assault nurse examiner ("SANE") and as a truck driver. (Id.). Dr. Riddle has written several articles and given presentations on health and safety in the workplace, particularly the risk factors of sexual harassment against female truck drivers. (Id. at 121).

In this case, she identified various risk factors for sexual harassment, which she determined by relying on her experience, research, and a survey of other peer-reviewed work in the field, and applying those risk factors to the facts at issue. (Id. at 8:3-16, 23:3-24, 47:4-23; 49:10-51:20, 103:14-21, 105:4-17, 111:1-12, 112:3-16, 116:10-18).

In her report, she reached the conclusion that Swift should not have placed Willis as Doe's mentor because Willis had a history of violent and inappropriate behaviors and because the company had previously decided he should train only male drivers. (Id. at 124).

Doe also offers the testimony of Steven Millwee, to support her negligent hiring and supervision claims. (Doc. # 113-1). Mr. Millwee holds an A.A. degree in police science and administration and a B.A. degree in criminology. (Doc. # 113-2 at 198). He worked as a police officer for four years, during which time he investigated sex crimes. (Id. at 205). He was President of the American Society for Industrial Security ("ASIS"), which "is the premier organization for security managers, executives and security professionals." (Doc. # 113-1 at 10:20-11:11). ASIS compiles industry standards for the security industry and "workplace violence cases." (Id. at 11:12-17). It also collects standards for "pre-employment screening" and "risk assessment," among other things. (Id. at 11:15-21). Mr. Millwee is also the CEO of two background screening companies, SecurTest and IReviewNow. (Id. at 9:23-10:19). Mr. Millwee headed security for Captain D's, a restaurant chain, where he assisted the human resources department with developing policies and procedures and

"conducted all investigations for the company, from armed robberies to sexual harassment." (Id. at 21:1-16).

Here, Mr. Millwee used his training and experience with security industry standards to determine whether Swift complied with those standards with respect to its treatment of Willis. (Id. at 11:12-13:7, 78:7-25, 88:1-25, 127:9-15, 137:6-9, 138:12-17). He relied on industry standards compiled by ASIS, the Society for Human Resource Management ("SHRM"), and the American National Standards Institute ("ANSI"). (Doc. # 112-2 at 144-45). In his report, he offered the following opinions:

- Willis's history of violent behavior made him unfit to be a trainer or mentor of women that would sleep in a truck cab without supervision.
- Swift's criminal background checks were inadequate.
- Swift's investigation of other claims by female drivers against Willis was inadequate.
- Swift failed to recognize several factors that made Willis's alleged assault of Doe foreseeable.

(Id. at 170-76). During his deposition, Mr. Millwee explained that Swift's background checks conducted prior to 2017 were deficient for failing to search Clayton County, Georgia, criminal records. (Doc. # 113-2 at 54:16-55:19, 62:5-22, 138:19-24, 139:9-22, 142:24-143:5, 156:1-21, 158:3-4, 162:10-

17, 163:15-164:20). According to Mr. Millwee, if Swift had followed industry standards and appropriately reviewed Willis's criminal history, it would have learned of the facts related to Willis's kidnapping, false imprisonment, and battery charges and found that his history rendered him unfit. (Doc. # 112-2 at 144-45).

F.   **Procedural History**

Doe initiated this action on June 30, 2021. (Doc. # 1). Doe filed her third amended complaint on August 30, 2021, alleging sexual battery (Count 1) and intentional infliction of emotional distress ("IIED") (Count 2) against Willis; and vicarious liability (Count 3), negligent supervision (count 4), negligent hiring (Count 5), and IIED (Count 6) against Swift. (Doc. # 15). Swift filed its answer on October 25, 2021. (Doc. # 20).

Now, Swift seeks summary judgment in its favor on Counts 3, 4, 5, and 6, and Doe seeks partial summary judgment on Swift's fourth, seventh, eighth, tenth, and eleventh affirmative defenses. (Doc. ## 73, 86). Both Swift and Doe responded (Doc. ## 104, 114), and replied. (Doc. ## 117, 125). Additionally, Swift filed two Daubert motions to exclude the expert report and testimony of two of Doe's experts (Doc. #

112, 113), and Doe responded. (Doc. ## 152, 153). The Motions are ripe for review.

## II.  **Legal Standard**

### A.   **Daubert Motion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. <u>See</u> <u>Id.</u> at 589–90. The <u>Daubert</u> analysis also applies to non-scientific expert testimony. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291

(11th Cir. 2005). The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010).

> The district court must assess whether:
>
> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. Id.

**B.   Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344

F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

III.   **Analysis**

    A.   **Swift's Daubert Motion as to Dr. Riddle**

      Swift seeks to exclude Dr. Riddle's expert testimony on the grounds that it fails to meet the qualifications, reliability, or helpfulness requirements of Rule 702. (Doc. # 112 at 1).

      1.   **Qualifications**

      The first question under Daubert is whether Dr. Riddle is qualified to testify competently regarding the matters she intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)).

      "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks

omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz, 253 F.3d at 666 (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

Swift contends that Dr. Riddle is not qualified to opine in this case because her education is only in nursing and her experience is unrelated to her opinions. (Doc. # 112 at 8-14).

The Court finds that Dr. Riddle is qualified to testify competently on violence against female truck drivers. Dr. Riddle has a Ph.D. in nursing, with a concentration in occupational health. (Doc. # 112-2 at 129). Through her research, she has focused on violence, particularly sexual assault, against female truck drivers. (Id. at 121). Dr. Riddle's work intersects neatly with the facts of this case and the opinion she provided regarding Willis's fitness to mentor female truck drivers. Therefore, she is at least minimally qualified to testify on these matters. Any further objections raised by Swift go to Dr. Riddle's credibility, not to admissibility.

## 2.  **Reliability**

The Court must also assess whether the expert's methodology is reliable. "Exactly how reliability is

evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." <u>Frazier</u>, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

<u>Seamon v. Remington Arms Co.</u>, 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. <u>Id.</u> (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." <u>Frazier</u>, 387 F.3d at 1261 (citation and internal quotation marks omitted). "[A] trial court may exclude expert testimony . . . whose factual basis is not

adequately explained." Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1111 (11th Cir. 2005).

Swift argues that Dr. Riddle's opinion is not based on any methodology and is based on insufficient facts. (Doc. # 112 at 15-18). Swift argues that Willis's criminal history and prior reports of sexual harassment and retaliation are insufficient facts to lead Dr. Riddle to conclude that Willis should not have been Doe's mentor. (Id. at 16-18).

Dr. Riddle's testimony is reliable. Dr. Riddle identified various risk factors for sexual harassment, which she determined by relying on her experience, research, and a survey of other peer-reviewed work in the field, and applying those risk factors to the facts at issue. (Id. at 8:3-16, 23:3-24, 47:4-23; 49:10-51:20, 103:14-21, 105:4-17, 111:1-12, 112:3-16, 116:10-18). In other words, Dr. Riddle relied on her education, experience, and knowledge in the field to reach her opinions. See Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1336 (11th Cir. 2010) ("[T]here are instances in which a district court may determine the reliability prong under Daubert based primarily upon an expert's experience and general knowledge in the field[.]"). Any alleged flaws in Dr. Riddle's methodology in deriving her two opinions are better addressed during cross examination. See Maiz v. Virani, 253

F.3d 641, 666 (11th Cir. 2001) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)).

### 3.   Helpfulness to the Trier of Fact

Again, to be admissible, expert testimony must assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand,"' . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison v. McGhan, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted). "Proffered expert testimony generally

will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Frazier</u>, 387 F.3d at 1262-63 (citation omitted).

Swift argues that Dr. Riddle's testimony will not "advance a material aspect of Plaintiff's case and simply purports to cloak her belief there is a causal connection between Swift's conduct and Plaintiff's injury as 'expert' testimony." (Doc. # 112 at 19-20). Doe argues that Dr. Riddle's testimony will assist the jury by identifying relevant risk factors of which Swift should have been aware that might be non-obvious to a lay person. (Doc. # 153 at 17-18).

The Court agrees with Doe. Dr. Riddle's testimony regarding various risk factors identified from her education and research, her explanation of the unique dangers presented to female drivers in the trucking industry, and her application of those findings to the facts of this case could assist a jury in determining the extent to which Swift was at fault for allowing Willis to allegedly assault Doe.

Swift's <u>Daubert</u> Motion as to Dr. Riddle (Doc. # 112) is denied.

**B.** **Swift's Daubert Motion as to Mr. Millwee**

Swift seeks to exclude Mr. Millwee's expert testimony on the grounds that it fails to meet the qualification, reliability, or helpfulness requirements of Rule 702. (Doc. # 113 at 1).

**1.** **Qualifications**

Swift argues that Mr. Millwee has not established any relationship between his experience and his conclusions. (Id. at 17-20). Swift contends that Mr. Millwee is relying solely on his experience to reach his conclusions and that his experience is insufficient "to enable him to offer insight to a jury beyond the understanding and experience of the average citizen." (Id. at 18).

Mr. Millwee is qualified to testify in this case. Mr. Millwee is testifying as to the sufficiency of Swift's procedures in its decisions to hire Willis and to allow him to train Doe, a female driver. Mr. Millwee holds an A.A. degree in police science and administration and a B.A. degree in criminology. (Doc. # 113-2 at 198). He worked as a police officer for four years, during which time he investigated sex crimes. (Id. at 205). He was President of the ASIS (Doc. # 113-1 at 10:20-11:11), which compiles industry standards for the security industry and "workplace violence cases." (Id. at

11:12-17). Mr. Millwee is also the CEO of two background screening companies, SecurTest and IReviewNow. (Id. at 9:23-10:19), and headed security for a restaurant chain, where he assisted the human resources department with developing policies and procedures and "conducted all investigations for the company, from armed robberies to sexual harassment." (Id. at 21:1-16).

In short, Mr. Millwee's experience with sexual harassment and workplace standards related to background checks and investigations qualifies him to provide his opinions regarding industry standards in hiring and supervising employees in this case.

### 2.   **Reliability**

Swift contends that Mr. Millwee did not use a reliable methodology to reach his conclusions and that he made several "egregious errors" in his report. (Doc. # 113 at 20-24). According to Swift, Mr. Millwee misread Swift's investigation documents and the prior background checks it ran on Willis. (Id. at 23-24). Doe responds that Swift is "cherry-picking isolated statements in [Mr.] Millwee's deposition" to create the impression that Mr. Millwee relied on inaccurate facts. (Doc. # 152 at 11-18).

Mr. Millwee's methodology is reliable. Mr. Millwee used his training and experience with security industry standards to determine whether Swift complied with those standards with respect to its treatment of Willis. (Doc. # 113-1 at 11:12-13:7, 78:7-25, 88:1-25, 127:9-15, 137:6-9, 138:12-17). He relied on industry standards compiled by ASIS, the Society for Human Resource Management ("SHRM"), and the American National Standards Institute ("ANSI"). (Doc. # 112-2 at 144-45).

As to whether Mr. Millwee relied on sufficient facts to reach his conclusion, the Court agrees with Doe. Though Swift has pointed to minor inaccuracies in Mr. Millwee's deposition (e.g., Mr. Millwee inaccurately stated that Willis's driver's license had expired (Doc. # 113-2 at 146:15-148:14, 150:1155:17)), such errors are not enough to exclude his testimony. Further, the other alleged errors in his report are based on disputed facts. For example, Swift argues that Mr. Millwee should not have simply "believed" Doe's version of the facts. However, "an expert is . . . permitted to base his opinion on a particular version of the disputed facts and the weight to be accorded to that opinion is for the jury." Duling v. Domino's Pizza, LLC, No. 1:13-cv-01570-LMM, 2015 WL 3407602, at *12 (N.D. Ga. Jan. 14, 2015) (quoting Feliciano

v. City of Miami Beach, 844 F.Supp.2d 1258, 1265 (S.D. Fla. 2012)). If Swift believes that the basis for Mr. Millwee's opinions is insufficient, then it can explore that on cross examination. See In re Disposable Contact Lens Antitrust, 329 F.R.D. 336, 369-72 (M.D. Fla. 2018) (finding expert's testimony was reliable despite defendant noting several areas in which the evidence to support his testimony was "shaky").

### 3.   **Helpfulness**

Swift contends that Mr. Millwee's testimony will not be helpful to the trier of fact because "legal conclusions are both directly and indirectly implicated throughout his testimony." (Doc. # 113 at 25). In response, Doe states that Swift's argument as to the helpfulness of Mr. Millwee's testimony is conclusory. (Doc. # 152 at 18-19).

The Court agrees with Doe. Swift does not indicate which parts of Mr. Millwee's testimony "directly and indirectly implicate[]" legal conclusions. Indeed, the Court believes that Mr. Millwee's expertise in industry standards for workplace safety and background screening will assist the jury in determining whether Swift was negligent in hiring and supervising Willis.

Swift's Daubert Motion as to Mr. Millwee (Doc. # 113) is denied.

C.   **Swift's Motion for Summary Judgment**

Swift seeks summary judgment on the following claims: vicarious liability for sexual battery and IIED by Willis (Count 3); negligent supervision (Count 4); negligent hiring (Count 5); and IIED by Swift (Count 6). The Court will address each claim in turn.

1.   **Vicarious Liability for Sexual Battery and IIED (Count 3)**

According to Swift, it is entitled to summary judgment on Count 3 because, as a matter of law, it cannot be held vicariously liable for Willis's alleged sexual assault. This is because Willis was an independent contractor who lacked authority to act on Swift's behalf and, regardless, did not act in furtherance of Swift's interests. (Doc. # 86 at 11). In opposition, Doe contends that Willis had apparent authority to act on Swift's behalf, enabling him to assault Doe. (Doc. # 114 at 10-14).

In a diversity action, the Court must apply "the substantive law of the forum state." Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Here, both parties agree that Florida law governs Doe's vicarious liability claim. (Doc. # 86 at 11 n. 12; Doc # 114 at 6). "In interpreting Florida law, we look

first for case precedent from the Florida Supreme Court. Where we find none, we are "bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise."" Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1021 (11th Cir. 2014) (citing Provau v. State Farm Mut. Auto. Ins. Co., 772 F.2d 817, 820 (11th Cir. 1985). Here, there is no Florida Supreme Court case on point; therefore, the Court looks to Florida appellate court decisions.

"Under Florida law, an employer cannot be held vicariously liable for the acts of an independent contractor; the employer can only be held vicariously liable for the acts of an employee/agent." Martinez v. Miami-Dade Cnty., 32 F. Supp. 3d 1232, 1237 (S.D. Fla. 2014) (citing Del Pilar v. DHL Global Customer Solutions (USA), Inc., 993 So.2d 142, 145 (Fla. 1st DCA 2008)).

Furthermore, an employer generally cannot be held liable for the tortious or criminal act of an employee, unless the act was committed during the course of employment to further a purpose or interest of the employer. Doe v. St. John's Episcopal Par. Day Sch., Inc., 997 F. Supp. 2d 1279, 1287-88 (M.D. Fla. 2014). "The conduct of an employee is considered

within the course and scope of employment when it (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master." Goss v. Hum. Servs. Assocs., Inc., 79 So. 3d 127, 132 (Fla. 5th DCA 2012) (internal citation omitted). The question of whether an employee is acting within the course and scope of employment is a question of law. Saullo v. Douglas, 957 So.2d 80, 86 (Fla. 5th DCA 2007).

Sexual assaults committed by employees are generally held to be outside the scope of employment, and, therefore, do not result in vicarious liability for the employer. Id. at 1288-89; Goss, 79 So. 3d at 132; S.D. v. City of Cape Coral, No. 2:17-cv-111-JES-MRM, 2017 WL 4342363, at *3 (M.D. Fla. Sept. 29, 2017); Hammer v. Lee Mem'l Health Sys., No. 2:18-cv-347-JES-MRM, 2018 WL 3707832, at *4 (M.D. Fla. Aug. 3, 2018). An exception exists when the employee purported to act on behalf of the employer or when the employee was aided by the agency relationship. Nazareth v. Herndon Ambulance Serv., Inc., 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985).

First, the Court notes that Doe acknowledged in her third amended complaint that Willis's actions were "motivated by

reasons personal only to him." (Doc. # 15 at 19). Willis's
job duties included transporting various materials and
mentoring Doe. Doe is correct: "There is no connection of the
job duties or Willis with Swift and the sexual assault of
[Doe]." (Id. at 19). Doe cannot contradict the allegations of
her own complaint in order to create a genuine issue of fact
at the summary judgment stage. See Reagan v. Targia, No. 6:09-
cv-2012-GAP-GJK, 2011 WL 13298576, at *3 n. 8 (M.D. Fla. Apr.
6, 2011) (barring plaintiff who alleged police officer was
acting within the scope of his authority when he arrested
plaintiff from arguing during summary judgment that the
officer was not acting within the scope of his authority).

Even if the Court looked past Doe's contradictory
complaint and response to Swift's motion for summary
judgment, the undisputed facts still demonstrate that Willis
acted outside the course and scope of his employment with
Swift. Neither party devotes much time to the issue of
Willis's employment status. Instead most of the briefing on
Count 3 is devoted to whether Doe can demonstrate that Swift
was vicariously liable if Willis was an agent or employee of
Swift. Regardless, the Court need not determine Willis's
employment status in deciding the Motion.

Assuming Doe can show that Willis was an employee or agent of Swift, the company is still not vicariously liable for Willis's alleged sexual assault. The alleged assault did not occur within the course and scope of Willis's employment because the act was not in furtherance of his employment with Swift. See Mason v. Fla. Sheriff's Self-Ins. Fund, 699 So. 2d 268 (Fla. 5th DCA 1997) (holding sexual assault by officer not within scope of employment, even though officer was on duty, in uniform, and serving a warrant on the women he raped); see also Rivera v. Aaron Rents, Inc., No. 8:07-cv-2190-JSM-TGW, 2008 WL 638353, at *3 (M.D. Fla. Mar. 5, 2008) (finding supervisor's sexual assault of employee did not further employer's business interest in leasing furniture and was not motivated by a desire to serve the employer) (citing Ayers v. Wal-Mart Stores, Inc., 941 F. Supp. 1163, 1168 (M.D.Fla.1996)).

Neither has Doe shown that Swift can be held vicariously liable through either exception. Doe does not attempt to argue that Willis committed the alleged assault on behalf of Swift; however, she does argue that Willis was aided by his apparent agency relationship. (Doc. # 114 at 10-13). The Court finds that there are insufficient facts to demonstrate that Willis's alleged assault was aided by any apparent agency

relationship he might have had with Swift, as this exception has been narrowly interpreted under Florida law.

Taking the evidence in the light most favorable to Doe, the evidence establishes that Willis had access to Doe by way of his relationship with Swift as a mentor. Willis's role as Doe's mentor meant that he had an opportunity to assault her. However, an employer providing its employee access to the victim is insufficient to establish he was aided by his employment. See Z.M.L. v. D.R. Horton, INC., No. 8:20-cv-0672-KKM-SPF, 2021 WL 3501099, at *6 (M.D. Fla. June 11, 2021) ("The fact that [the employee] was in the [victim's] home by virtue of his employment is not enough to demonstrate that his agency helped him perpetrate a sexual assault.")(citing Agriturf Mgmt, Inc. v. Roe, 656 So. 2d 954, 955 (Fla. 2d DCA 1995)); Goss, 79 So. 3d at 132 (holding that an alleged child sexual assault committed by an employee of a children's group care facility was not aided by the fact that the employee was an agent of the care facility, despite access being by way of his employment); Rivera, 2008 WL 638353 at *3 (determining the exception was not satisfied even though the supervisor "used isolated areas in the store to accomplish his illicit purpose" and assaults took place during business hours); Iglesia Cristiana La Casa Del Senor, Inc. v. L.M., 783 So. 2d

353, 358 (Fla. 3rd DCA 2001) (finding that the exception was not satisfied because "while [the employee] may have had access to [the victim] because of his position as the Church pastor . . . he was not engaging in authorized acts or serving the interests of the Church during the time he tried to seduce her or on the day he raped her").

In her response, Doe's counsel argues for the first time that "it behooved [Doe] to be especially accommodating to Willis" because he was her mentor. (Doc. # 114 at 13). "[A]ttorney argument is not evidence." Lehrfield v. Liberty Mut. Fire Ins. Co., 396 F. Supp. 3d 1178, 1183 (S.D. Fla. 2019) (citing Bryant v. U.S. Steel Corp., 428 F. App'x 895, 897 (11th Cir. 2011)). While the Court is sympathetic to her argument in theory, Doe points to no record evidence demonstrating that she actually felt the need to be especially accommodating to Willis. Indeed, the record evidence demonstrates that Doe switched mentors several times due to various issues with her mentors during the course of her training by simply texting the Driver Qualification Leader – undercutting the idea that Willis's mentor role provided him with anything more than access to Doe. (Doc. # 109-1 at 94:25-99:12, 102:24-103:17, 113:14-116:13, 119:12-24, 134:5-21). In short, based on the evidence in the record, Willis's role as

her mentor only furthered the alleged assault by providing Willis access to Doe; therefore, Doe has not demonstrated that this case fits within the relevant exception.

Because Doe has not demonstrated sufficient evidence to show that Swift would be vicariously liable for his alleged sexual assault under Florida law even if he was the company's apparent agent or employee, the Court grants summary judgment in favor of Swift as to Count 3.

### 2. Negligent Supervision and Negligent Hiring (Counts 4 and 5)

Swift seeks summary judgment in its favor as to Doe's claims for negligent hiring and supervision (Counts 4 and 5) to the extent her claims are based on Swift's knowledge of Willis's criminal history. (Doc. # 86 at 21). According to Swift, it could not have considered Willis's 2011 First Offender Plea Agreement when it hired Willis as an owner-operator in 2018 because the inclusion of that criminal history in a background check conducted after it was expunged in 2017 would have violated the Fair Credit Reporting Act. (Id. at 21-23). Doe argues that Swift should have known about Willis's history prior to its background check in 2018, through the background checks it ran on Willis the other three times it hired him. (Doc. # 114 at 14-18).

As an initial matter, the Court must determine what law to apply to Doe's claims. Swift contends that the Court should apply Arizona law to Doe's negligent supervision and hiring claims. (Doc. # 86 at 17). Doe does not state in her a response a position on whether Arizona law applies. "As a preliminary matter, the court must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc. Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007). "Under Florida law, a court makes a separate choice of law determination with respect to each particular issue under consideration." Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996).

"In tort actions, federal courts sitting in diversity in Florida employ Florida's 'most significant relationship' test to resolve conflicts of law." Bell v. Miedema, 516 F. Supp. 3d 1340, 1342–43 (M.D. Fla. 2021). "The test involves consideration of four relevant factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of

34

the parties; and (4) the place where the relationship, if any, between the parties is centered." <u>Jeffers v. Kerzner Int'l Hotels Ltd.</u>, 319 F. Supp. 3d 1267, 1270 (S.D. Fla. 2010).

The Court finds that Arizona has the most significant relationship to Doe's negligent supervision and hiring claims. The alleged assault occurred in Florida, but Willis and Doe were driving through multiple states and their location bears little significance to either the parties or the negligent supervision and hiring claims. <u>See</u>, <u>e.g.</u>, <u>Stallworth v. Hospitality Rentals</u>, 515 So.2d 413, 416 (Fla. 1st DCA 1987) (occurrence of car accident in Louisiana "bears little or no significant relationship" to the rental company's potential liability under a rental agreement signed in Florida).

The other three factors weigh in favor of applying Arizona law. Swift's corporate headquarters and place of business is Phoenix, Arizona. Doc. # 86-2 at ¶ 2). This is the location in which the company's security and recruiting departments process background checks and hire applicants. (<u>Id.</u> at ¶ 5). As such, Swift's alleged misconduct (negligently hiring and supervising Willis) occurred in Arizona. <u>See</u> <u>Innovative Strategic Commc'ns, LLC v. Viropharma, Inc.</u>, No.

8:11-cv-1838-VMC-TBM, 2012 WL 3156587, at *10 (M.D. Fla. Aug. 3, 2012) (finding defendant's conduct occurred at the place where defendant was located at the time it engaged in such conduct, not the place where the conduct was directed). Additionally, no party is a Florida resident – Swift is a citizen of Arizona, Doe is a citizen of Texas, and Willis is a citizen of Georgia. See Universal Physician Servs. v. Del Zotto, Case No. 8:16-cv-1274-CEH-JSS, 2019 WL 6033062, at *8 (M.D. Fla. Nov. 14, 2019) (finding residence of the parties inconclusive where the parties' connections were split between two states).

Under Arizona law, to prove negligent supervision, "the plaintiff must show the employer knew or should have known the employee was incompetent and that the employer subsequently failed to supervise the employee, ultimately causing the harm at issue." Hernandez v. Singh, No. CV-17-08091-PCT-DWL, 2019 WL 367994, at *7 (D. Ariz. Jan. 30, 2019). Similarly, the employer may be liable for negligent hiring "not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." Contreras v. Brown, No. CV-17-08217-PCT-JAT, 2019 WL 1980837, at *4 (D. Ariz. May 3, 2019) (quoting Quinonez in re Quinonez v.

<u>Andersen</u>, 696 P.2d 1342 (Ariz. Ct. App. 1984)). "Thus, for a negligent hiring claim to lie, the employer must have known or had some reason to know of the employee's incompetence before hiring the employee." <u>Id.</u> (citation omitted).

Swift is not entitled to summary judgment as to the issue of its knowledge of Willis's criminal history. Doe alleges that Swift negligently hired Willis when it failed to run an appropriate background check that would have noted his criminal history of violence against a woman. (Doc. # 15 at 14). Doe's expert, Mr. Millwee, has opined that Swift's three prior background checks were inadequate for failing to search Clayton County, Georgia, criminal records and that an adequate check and subsequent investigation would have indicated that Willis's criminal history made him unfit for the job. (Doc. # 112-2 at 170-176). Mr. Millwee contends that, even if Swift could not have seen Willis's criminal history when it hired him as an owner-operator in 2018, it should have had knowledge of the underlying facts of that history from its three prior background checks. (Doc. # 113-2 at 54:16-55:19, 62:5-22, 138:19-24, 139:9-22, 142:24-143:5, 156:1-21, 158:3-4, 162:10-17, 163:15-164:20). Taking the evidence in the light most favorable to Doe, a reasonable jury could find that this evidence is sufficient to

demonstrate that Swift was negligent in hiring Willis in 2018. Doe's negligent supervision claim survives for the same reason. Based on what Swift allegedly should have known about Willis's criminal history – not to mention its earlier decision to bar Willis from mentoring female drivers – a reasonable jury could find Swift negligently supervised Willis when it allowed him to mentor Doe, a female driver.

### 3. IIED by Swift (Count 6)

Swift contends that it is entitled to summary judgment on Count 6 of Doe's third amended complaint, which alleges IIED by Swift. In Count 6, Doe only alleges the following:

> On or about September 29, 2020, while working within the course and scope of employment as a supervising driver-trainer for Swift Transportation[,] Defendant, Willis, intentionally sexually assaulted Plaintiff, for his own sexual gratification, while Plaintiff was under his supervision as an employee of Swift Transportation. The aforementioned sexual battery was committed intentionally or recklessly, was extreme and outrageous conduct, committed without the consent of Plaintiff and against her will, causing severe emotional distress.

(Doc. # 15 at ¶¶ 46-47). Count 6 does not contain any additional allegation that Swift's conduct specifically was outrageous. As such, it is duplicative of its claim against Swift for vicarious liability for Willis's alleged assault.

Even if the Court looked past the language of Doe's third amended complaint, she still has not pointed to any record evidence demonstrating that Swift itself acted outrageously, intentionally, or recklessly.

In order to state an IIED claim, a plaintiff must allege "1) deliberate or reckless infliction of mental suffering by defendant; 2) by outrageous conduct; 3) which conduct of the defendant must have caused the suffering; and 4) the suffering must have been severe." Griffin v. Polk Cnty. Sheriff's Off., No. 8:09-cv-960-VMC-MAP, 2009 WL 5171754, at *2 (M.D. Fla. Dec. 23, 2009) (citation omitted). While "there is no definitive example of what constitutes 'outrageous conduct,' . . . Florida case law on the subject has evinced a comparatively high standard." Id. (quoting Golden v. Complete Holdings, Inc., 818 F. Supp. 1495, 1499-1500 (M.D. Fla. 1993)). Specifically, "[t]he standard on a claim for intentional infliction of emotional distress is high in the employment realm and strongly disfavored." Jenks v. Naples Comm. Hosp., Inc., 829 F. Supp. 2d 1235, 1256 (M.D. Fla. 2011).

Furthermore, the Florida Supreme Court has provided the following explanation of outrageous conduct:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 (1965)). "Under Florida law, whether the actor's conduct is atrocious and utterly intolerable in a civilized community, and thus may form the basis of a claim for intentional infliction of emotional distress, is a matter of law for the court, not a question of fact." Dependable Life Ins. Co. v. Harris, 510 So.2d 985, 988 (Fla. 5th DCA 1987).

Doe cites no authority for the proposition, and the Court has not independently found any authority, that an IIED claim can proceed against an employer for allegedly failing to properly hire and supervise an employee when the employer cannot be held vicariously liable for the employee's actions. Contra Ayers v. Wal-Mart Stores, Inc., 941 F. Supp. 1163, 1168 (M.D. Fla. 1996) (finding that plaintiff had not sufficiently alleged her employer's conduct was outrageous where she alleged that the employer "negligently trained and supervised its managerial employees"). Doe does not point to

any record evidence demonstrating that Swift's conduct here was intentional or reckless. At this stage, Doe needs more than attorney argument to maintain her IIED claim against Swift.

Accordingly, the Court grants summary judgment as to Count 6 in favor of Swift.

### D.   **Doe's Motion for Summary Judgment**

Doe seeks summary judgment on five of Swift's nineteen defenses. (Doc. # 73). Doe asserts that she is entitled to judgment on Swift's Fourth, Seventh, Eighth, Tenth, and Eleventh defenses because Swift is a "nonsubscriber" under Texas's worker's compensation law and, therefore, unable to present certain defenses under either Texas or Florida law. (Id. at 1-2). According to Doe, the VEI Agreement, through which she agreed to participate in Swift's Voluntary Employee Injury Benefit Plan, bars Swift from asserting that Doe should have pursued her claim through the worker's compensation system and from using the following defenses: "(1) that the employee was guilty of contributory negligence; (2) that the injury or death was caused by the negligence of a fellow employee; or (3) that the employee had assumed the risk of injury or death." (Id. at 6) (quoting Doc. # 104-1 at 59). In response, Swift argues that (1) neither Texas nor Florida law

prevents them from utilizing these defenses and (2) the VEI Agreement does not bar such defenses, as Doe has specifically pled that her injuries were not sustained during the course of her employment, and, therefore, are not covered by the agreement. (Doc. # 104 at 10).

The defenses at issue assert the following arguments: Doe's claims are barred because worker's compensation is the exclusive remedy (Fourth defense); Doe was negligent and her claims should barred or reduced pursuant to the doctrine of comparative negligence (Seventh defense); Doe's damages were caused by the conduct of others for whom Swift is not liable (Eighth defense); Swift is entitled to all setoffs and limitations of liability pursuant to the doctrine of comparative fault, including Fla. Stat. § 768.81 (Tenth defense); Swift is entitled to the benefit and protection of § 768.81, including entry of judgment based on the percentage of fault of Swift (Eleventh defense). (Doc. # 20).

At the start of Doe's employment with Swift, she signed the VEI Agreement (Doc. # 104-1), that she now alleges bars the company from asserting several defenses. As part of the agreement, Doe agreed that she would notify Swift's Safety Department within twenty-four hours after sustaining an injury on the job and acknowledged that any claim or dispute

relating to an on-the-job injury would be subject to arbitration. (Id. at 59-60). The VEI Agreement defines coverage under the policy and specifically excludes any injury that "arose out of an act of a third person intended to injure you because of personal reasons and not directed at you as an employee or because of your employment." (Id. at 21-22). Importantly, in her third amended complaint, Doe explicitly alleges that "the sexual assault was not connected with her employment as a driver, and her sexual assault by Willis was motivated by reasons personal only to him." (Doc. # 15 at 19). She further alleged that "[t]here is no connection of the job duties of Willis with Swift Transportation and the sexual assault[.]" (Id.).

Doe dedicates much of her Motion to a choice of law analysis in which she argues that Texas law applies to Swift's defenses. (Doc. # 73 at 6-10). However, the Court need not engage in such an analysis. Doe has not shown, under either Texas or Florida law, that her claims are subject to the worker's compensation laws she cites in support of her Motion.

Under Texas Law, the worker's compensation scheme applies if "the injury arises out of and in the course and scope of employment." Texas Labor Code § 406.031. Texas excepts from coverage injuries that "arose out of an act of

a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of the employment[.]" Texas Labor Code § 406.032(1)(C). Texas Labor Code Section 406.033 provides:

> In an action against an employer by or on behalf of an employee who is not covered by workers' compensation insurance . . . to recover damages for personal injuries or death **sustained by an employee in the course and scope of the employment,** it is not a defense that:
>
>> (1) the employee was guilty of contributory negligence;
>> (2) the employee assumed the risk of injury or death; or
>> (3) the injury or death was caused by the negligence of a fellow employee.

Texas Labor Code § 406.033(a) (emphasis added).

Similarly, Florida's worker's compensation scheme provides that an "employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death arising out of work performed in the course and the scope of employment." Fla. Stat. § 440.09. Florida law provides that an employer that fails to secure worker's compensation "may not plead as a defense that the injury was caused by negligence of a fellow employee, that the employee assumed the risk of the employment, or that the injury was due to the comparative negligence of the employee." Fla. Stat. § 440.11(1)(a).

The Court need not decide which law applies because both Texas and Florida's worker's compensation schemes would only apply to Doe's claim if her injury arose out of and in the course and scope of employment. Yet Doe has explicitly pled that her injury was "not connected to her employment" with Swift and that Willis was motivated "by reasons personal only to him." (Doc. # 15 at 19). Doe implies that a nonsubscriber employer is barred from asserting common law defenses regardless of the nature of the plaintiff's claim. Both Texas and Florida law, however, only bar such defenses from being raised in actions for injuries sustained in the course of employment. See Texas Labor Code § 406.033(a) (barring common law defenses in actions to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment"); Fla. Stat. § 440.11 (establishing that employers cannot plead common law defenses when the employee claims "an accidental compensable injury or death arising out of work performed in the course and the scope of employment"). In her Motion, Doe does not point to any facts that demonstrate that her injury arose out of and in the course and scope of her employment.

Further, the VEI Agreement on which Doe relies tracks the language in both Texas and Florida's worker's

compensation laws. It excludes explicitly any injury that arose out of an act of a third person intended to injure [the employee] because of personal reasons and not directed at the [the employee] as an employee or because of the [employee's] employment." (Doc. # 104-1 at 21-22). The Court notes that the language in Doe's third amended complaint tracks the language in the VEI Agreement, allowing her to avoid the mandatory arbitration requirement. The Court will not allow Doe to use the VEI Agreement as both a sword and a shield. In asserting that summary judgment is warranted, Doe relies on the VEI Agreement but ignores the provisions of the agreement that do not benefit her. Doe conceded in her operative complaint that Willis's alleged assault was an intentional tort committed for a personal reason and not connected to Doe's work. As such, her claim was excluded from the worker's compensation schemes in Texas and Florida as well as the VEI Agreement between the parties, and she cannot rely on any of those sources to bar Swift from asserting its Fourth, Seventh, Eighth, Tenth, and Eleventh defenses.

Therefore, Doe's Motion for Partial Summary Judgment (Doc. # 73) is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff Jane Doe's Motion for Partial Summary Judgment (Doc. # 73) is **DENIED.**

(2)   Defendant Swift Transportation Co. of Arizona, LLC's Daubert Motion to strike Kimberly Riddle's testimony (Doc. # 112) is **DENIED.**

(3)   Defendant Swift's Daubert Motion to strike Steven Millwee's testimony (Doc. # 113) is **DENIED.**

(4)   Defendant Swift's Motion for Summary Judgment (Doc. # 86) is **GRANTED** as to Counts 3 and 6 of Doe's third amended complaint and **DENIED** as to Counts 4 and 5.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 5th day of April, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE