UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANE DOE,

      Plaintiff,

v.                                                                                   Case No. 8:21-cv-1576-VMC-CPT

MURRAY WILLIS, and SWIFT
TRANSPORTATION CO. OF
ARIZONA, LLC,

      Defendants.

_____/

# **O R D E R**

Before the Court is Defendant Swift Transportation Co. of Arizona, LLC's (Swift) motion for sanctions against Plaintiff Jane Doe. (Doc. 56). For the reasons discussed below, Swift's motion is granted in part and denied in part.[1]

## I.

This lawsuit centers around Doe's claim that Defendant Murray Willis sexually assaulted her in late September 2020 while Willis was training her to be a truck driver on behalf of Swift. (Doc. 15). Willis denies that any such assault occurred and asserts

---

[1] "'[M]agistrate judges have jurisdiction to enter sanctions orders for discovery failures which do not strike claims, completely preclude defenses[,] or generate litigation-ending consequences.'" *Wilson v. HH Savannah, LLC*, 2022 WL 3273718, at *9 (S.D. Ga. June 1, 2022) (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 280 F.R.D. 694, 694 n.2 (S.D. Fla. 2012)).

that he and Doe were involved in a consensual relationship at the time.  (Doc. 13-1; Doc. 158 at 4).

In June 2021, Doe filed a complaint alleging sexual battery against Willis, as well as vicarious liability and negligent supervision and hiring against Swift.  (Doc. 1). Over the next two months, Doe amended her complaint on several occasions (Docs. 8, 12, 15), and Swift and Willis submitted their respective answers (Docs. 13, 20).

Roughly one year later, in October 2022, Swift filed the instant motion for sanctions after learning that Doe disposed of a cell phone she used during the relevant period.  (Doc. 56).  The Court heard oral argument on Swift's motion in November 2022 (Doc. 71) and ultimately set the matter for an evidentiary hearing in January 2023 (Docs. 97, 103) due to the number of factual issues raised by the parties.  The Court directed the parties to "be prepared to present evidence pertinent to the issues raised in [Swift's] motion and at the [November 2022] oral argument[,]" including testimony by Doe's counsel, if necessary and appropriate.  (Doc. 103).

At the evidentiary proceeding, Swift's forensic expert, Dan Regard, Doe's forensic expert, Scott Greene, and Doe all testified.  (Doc. 160).  After the hearing, the Court ordered the parties to file proposed findings of fact and conclusions of law "contain[ing] all facts and legal authority they wish[ed] the Court to consider[.]" (Doc. 145).  To ensure there would be no confusion relative to the contentions raised by the parties, the Court additionally instructed them "not [to] incorporate by reference any prior legal arguments[.]."  (Doc. 145).  The parties have since submitted their filings

2

in accordance with the Court's directive (Docs. 157, 158), and the matter is therefore ripe for the Court's review.[2]

## II.

The following background is derived from the evidence adduced at the January 2023 hearing and other relevant information in the record.  During the time frame leading up to and after the averred rape in September 2020, Doe and Willis communicated with each other via text messages.  (Doc. 144-11; Doc. 144-14; Doc. 157 at 2).  According to a declaration Doe executed in response to the instant motion, she contemporaneously deleted some of the messages she received from Willis that upset her.  (Doc. 67-5).  At the time, Doe was using an Apple iPhone 6s with the phone number ending in -8468 (First Phone Number).  (Doc. 160 at 21).

Approximately seven months after the claimed assault, in April 2021, Doe retained a lawyer—Mark Levin—to represent her in the matter.   (Doc. 144-18). Several days later, Levin sent a letter to Swift demanding that it preserve information pertaining to Doe's allegations.  *Id.*  Not long afterwards, Doe's son took screenshot images of the text messages between Doe and Willis that were located on her iPhone 6s.  (Doc. 144-11; Doc. 160 at 30, 151–53).  These screenshots did not include some data files and photographs exchanged between the parties, nor did they capture any associated metadata.[3]  (Doc. 144-11).

---

[2] The Court also recently ruled on both parties' motions for partial summary judgment.  (Doc. 169).

[3] "Metadata is '[t]he generic term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file.'"  *Selectica, Inc. v. Novatus, Inc.*, 2015 WL 1125051, at *3 (M.D. Fla. Mar. 12, 2015) (quoting The Sedona Conference Glossary: E–

At the evidentiary hearing, Doe testified that in or around this period, Levin explained to her that she had a duty to preserve evidence.  (Doc. 160 at 148–50).  Specifically, Doe testified that Levin told her "[d]on't delete text messages, don't throw away evidence, and don't post anything on Facebook.  That's about it."  (Doc. 160 at 150).  Neither Doe nor her counsel, however, produced any documentation at the hearing that memorialized the nature and substance of the instructions Levin provided to Doe about her preservation obligations.

During the same month that Doe hired Levin, Doe began using a Motorola device with a phone number ending in -9762 (Second Phone Number).  (Doc. 160 at 22).  Doe continued utilizing this second phone until December 14, 2021.  (Doc. 160 at 22).  Doe also continued to use her iPhone 6s with the First Phone Number until September 2021.  (Doc. 160 at 21).

On December 14, 2021, Swift served its First Requests for Production on Doe.  (Doc. 144-4; Doc. 158 at 5).  Of significance here, Swift sought:

> 12.    All documents, including any text messages, emails, blog or website posts, or other electronic communications, to or from [Doe] regarding Swift; Murray Willis; [Doe's] employment with [Swift]; the claims set forth in the [c]omplaint; or the subject matter of this litigation; or which reflect [Doe's] mental or emotional state after January 1, 2019.
>
> * * *
>
> 106.   All documents reflecting communications (or attempted communications), to or from [Doe] on September 29, 2020.

---

Discovery and Digital Information Management (Fourth Edition)).   "In other words, metadata is 'data about data.'"  *Id.* (quoting The Sedona Conference Journal, Commentary on Ethics & Metadata (2013)).

107.   All communications between [Doe] and Willis.

108.   All communications to or from [Doe] referring, relating, discussing Willis.

\* \* \*

114.   All documents reflecting communications, to include text messages, voicemails, and e-mails between [Doe] and (a) any employee of [Swift] or (b) any independent contractor for Swift.

(Doc. 144-4 at 5, 64, 66).

On the same day that Swift served these discovery requests, Doe ceased using the Motorola device and began using her iPhone 6s again.  (Doc. 160 at 22).  At the time Doe made this change, she apparently had the Second Phone Number (i.e., the number assigned to the Motorola device) transferred to the iPhone 6s, such that it became the operative number for that Apple device.  *Id.* at 22.

In January 2022, without interposing any objections, Doe responded to Request No. 12 by turning over the following items: (1) screenshots of the text messages between herself and Willis which she collected pre-suit, as well as a total of five pages of text messages between herself and two other Swift employees; (2) an April 2020 recorded phone conversation between Doe and a woman named Latrista Houston, who Doe apparently believed to be Willis's new paramour; (3) emails between Doe's counsel and Swift; and (4) expert reports from each of Doe's three retained experts.[4]

---

[4] Swift claims that Doe obtained all of this data in April 2021.  (Doc. 158 at 7).  Although the timing of Doe's collection of both her recorded call with Houston and the text messages between her and the

(Doc. 144-4 at 5; Doc. 144-11; Doc. 144-19 at 2; Doc. 158 at 7–8).   Doe also answered Request Nos. 106, 107, 108, and 114 by referring Swift to the items she produced in response to Request No. 12.  (Doc. 144-4 at 64, 66).  Notably, Doe did not submit any other communications to Swift in response to these document requests and produced only those materials she collected in April 2021.  (Doc. 144-11; Doc. 144-4 at 64, 66; Doc. 158 at 7–8).

In March 2022 and again in June 2022, Swift sent subpoenas to Doe's telephone carrier, Tracfone, seeking call and message data for the First Phone Number.  (Doc. 144-1; Doc. 144-2; Doc. 158 at 14).  Tracfone produced records responsive to those requests in April 2022 and August 2022, respectively.  *Id.*

In the midst of these record collection efforts, in May 2022, Swift sent a meet-and-confer letter to Doe addressing what it believed to be deficiencies with her discovery disclosures.  (Doc. 144-19).  Among other things, Swift asked Doe to clarify whether she was withholding any communications with Willis; to supplement her production with any communications "regarding Swift[,] Willis[,] or [Doe's] employment with Swift, legal claims, or mental and emotional state after January 1, 2019;" and to turn over "all communications exchanged between [Doe] and Willis, including data files that were transmitted via text." (Doc. 144-19).  According to Swift, Doe supplied additional written responses to Swift's discovery requests in June 2022 but did not amend her prior responses to Request Nos. 12, 106, 107, 108, or 114.  (Doc.

---

two other Swift employees was not sufficiently addressed at the evidentiary hearing, absent argument from Doe to the contrary, it appears that Swift's representation is accurate.

158 at 12).[5]  Swift followed-up on some of these same issues the next month as the parties continued to confer.  (Doc. 144-22).

In July 2022, Doe furnished Swift with a second supplemental discovery response.  (Doc. 144-5).  In doing so, Doe revised her response to Request No. 12 for the first time to state: "[s]ee texts, emails, and [Doe's] medical records previously produced.  [Doe] no longer has possession of the [iPhone 6s] and has provided all responsive documents she previously saved from [the First Phone Number]."  (Doc. 144-5 at 5).  Doe also amended her response to Request No. 106—again for the first time—to represent that she did not have any communications or attempted communications sent or received by her on the date of the alleged assault.[6]  (Doc. 144-5 at 69–70).  Doe's responses to Request Nos. 106, 107, 108 and 114 otherwise remained unchanged, as they did when Doe subsequently supplemented her responses on several occasions.  (Docs. 144-6, 144-7, 144-8); *see also* (Doc. 158 at 13).

Swift deposed Doe in early August 2022.  During the course of her deposition, Doe testified about the loss of her iPhone 6s, as well as the purchase of the Motorola device:

> Q.    Okay.   Approximately when did you change your phone number, Ma'am?
> A.    2021.
> Q.    When you changed your phone number in 2021, did you also get a new

---

[5] The Court accepts Swift's representations to this effect but notes that the underlying document upon which Swift relies was not admitted as an exhibit at the evidentiary hearing.  (Doc. 158 at 12); (Doc. 144).

[6] In her response, Doe misnumbered Request No. 106 as Request No. 105.  (Doc. 144-5 at 70); (Doc. 158 at 13).

phone?

A.      Yes.

Q.      Okay.  And what happened to the phone that you previously had?

A.      It kinda just got demolished, basically.  Like not—you could barely . . . see that it was a phone; kind of like.

Q.      How did that happen?

A.      Dropped it.

Q.      And approximately when do you recall, did you drop the phone?

A.      I dropped it multiple times, and I was trying to salvage it, but it was at the point that there was no more salvaging that phone.  So I had to buy another one.

Q.      And if we wanted to know on what date you brought a new phone, would we be—would you be able to look at a bank account or a credit card statement?  What would be available to you?

A.      Maybe I can like—*I know I bought it at Walmart.  I'm thinking probably like at—I don't want to lie.  So all I know is like towards like probably middle of '21.*

Q.      *Did you keep the phone?*

A.      *No.*

Q.      *And what did you do with it?*

A.      *It's just gone.  Like throw away; like.  I don't have no use for it no more, because it was too broken to do anything with it.*

Q.      *Okay.  So you think you threw it away?*

A.      *It's gone.  It's been gone.*

Q.      *At the time that you—that the device was gone, had you already retained your lawyer in this case?*

A.      *No, no -- yes, I did.  I had my lawyer, because I had—yes, I think I had my lawyer at that time.  I did.  I did.*

(Doc. 144-17 at 25–27) (emphasis added).

Swift learned of Doe's Second Phone Number shortly after the deposition.

(Doc. 144-23).  As a result, Swift sent a subpoena to Tracfone for that number, which

led to the production of roughly four hundred pages of documents in September 2022.

(Doc. 144-3).  According to Swift, these records revealed that Doe had been using her

iPhone 6s with the Second Phone Number to make calls and to send text messages up until July 28, 2022, which was approximately one week before her deposition. (Doc. 158 at 14–15).

In early October 2022, Swift sent Doe another meet-and-confer letter setting forth its concerns with Doe's discovery efforts, including her representations in her second supplemental discovery response that she was not in the possession of the iPhone 6s as of mid-July 2022. (Doc. 144-24). Swift also requested that Doe agree to a forensic review of her devices. *Id.* When Doe refused, Swift filed the instant motion for sanctions. (Doc. 56).

At the January 2023 evidentiary hearing, Doe testified she threw her iPhone 6s away sometime between July 28, 2022, and her deposition on August 3, 2022, since she believed she had "produced everything that needed to be produced for the case." (Doc. 160 at 163). Doe maintained in this respect that she thought her April 2021 disclosures were sufficient "[b]ecause only Mr. Willis was the one that [sic] was any question." *Id.* at 153. Doe seemed to admit, however, that she did not collect any other messages from her iPhone 6s after April 2021, nor did she search either her Motorola device or a Samsung device she was then using for any responsive items after that period either. *Id.* at 154, 159–61. Further, while Doe described her iPhone 6s during her testimony as being "totally destroyed," she acknowledged that she discarded it without first consulting her attorney. *Id.* at 166–67. Doe also conceded that she understood at the time she disposed of the iPhone 6s that she was obligated to keep potential evidence in the lawsuit. *Id.* at 166. To that point, Swift's expert

9

testified at the hearing that even though it may appear to a user that a phone is broken, it still may have value to a forensic investigator, who can access it and recover data. *Id*. at 50–51.

III.

By way of its motion, Swift asks that pursuant to the spoliation of evidence provisions found in Federal Rule of Civil Procedure 37, the Court either dismiss the action or issue an adverse jury instruction against Doe at trial.   (Doc. 158). Alternatively, Swift requests that the Court implement "remedial measures" under Rule 37, as well as enter an order requiring Doe to pay Swift's attorneys' fees and costs under Rule 26(g) and/or the Court's inherent authority.  *Id.*  Swift argues that these sanctions are necessary given the potential importance of the information on Doe's iPhone 6s which is no longer available to it.  *Id.*  To bolster this claim, Swift states that Willis and Doe present irreconcilable versions of the facts, including as to the "consensual nature of their relationship; when they first engaged in a sexual relationship; whether Willis threatened or otherwise frightened [Doe]; why their relationship soured[;] and the circumstances [that gave] rise to [Doe]'s decision to first report to law enforcement and [to] initiate this lawsuit seven months after the alleged assault," all of which—Swift maintains—are "critical to the determination of [its] liability."  *Id.*  Swift also explains that it believes the iPhone 6s contained messages between Doe and Willis and/or between Doe and others which would buttress this defense.  *Id.*  As an example, Swift asserts there may have been evidence of communications on the iPhone 6s which showed that Doe was jealous of Willis's

10

subsequent relationship with Houston.  *Id.*  Swift posits that such communications may have involved Doe and Willis; Doe and her cousin, Stanley Butler, to whom Doe claims she reported the assault the day after it allegedly occurred; and/or Doe and a former Swift employee, Robert Wells, with whom Doe first began communicating in March 2021 and who shared with Doe rumors and prior complaints about Willis.  *Id.*  Yet, despite identifying these individuals as persons having knowledge of her claims, Doe apparently did not screenshot or otherwise attempt to preserve all of her relevant communications with any of them.  (Doc. 160 at 153).

## A.

"'Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"  *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  A district court has "broad discretion" to sanction a party for the spoliation of evidence.  *Romero v. Regions Fin. Corp./Regions Bank*, 2019 WL 2866498, at *3 (S.D. Fla. July 3, 2019) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).

When considering a spoliation claim involving electronically stored information (ESI), such as here, courts look to Rule 37(e), as amended in 2015.  That rule authorizes the particular "measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these

measures." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.[7]  In doing so, it "forecloses reliance on inherent authority or state law to determine when certain measures should be used." *Id*.  As a result, "many courts have held that Rule 37(e) . . . provide[s] the exclusive mechanism by which [a court] must analyze spoliation allegations involving ESI." *Romero*, 2019 WL 2866498, at *4 (collecting cases).

> Rule 37(e) states:
>
> If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1)  upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

As reflected by this language, four threshold elements must be present for Rule 37(e) to apply: (1) there must have been a duty to preserve ESI; (2) the ESI must have been lost or destroyed; (3) the ESI must have been lost as a result of the party's failure

---

[7] The Eleventh Circuit has stated that although the advisory committee notes are not binding upon the courts, they are afforded "'great weight'" in interpreting Rule 37(e). *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 2022 WL 433457, at *13 n.19 (11th Cir. Feb. 14, 2022) (quoting *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005)).

to take reasonable steps to preserve it; and (4) the ESI must not have been restorable or recoverable through additional discovery.  *See id.*; *Burns v. Medtronic, Inc.*, 2017 WL 11633269, at *3 (M.D. Fla. Aug. 9, 2017) (citation omitted); *Akkasha v. Bloomingdales, Inc.*, 2019 WL 11215918, at *4 (S.D. Fla. Oct. 18, 2019) (citation omitted); *Sosa v. Carnival Corp.*, 2018 WL 6335178, at *10 (S.D. Fla. Dec. 4, 2018) (citation omitted). If the foregoing elements are not met, then a court must deny a request "for spoliation sanctions or curative measures."  *Sosa*, 2018 WL 6335178, at *10 (internal quotation marks and citation omitted).

Even if Rule 37's threshold criteria are satisfied, however, a court may only award sanctions under subsection (e)(1) if it finds "prejudice" to another party, or under subsection (e)(2) if it finds that the spoliating party acted with the "intent to deprive" the opposing side of ESI.  Fed. R. Civ. P. 37(e); *Title Cap. Mgmt., LLC v. Progress Resid., LLC*, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 29, 2017) (citation omitted).  These two subsections operate independently of each other.  *See* Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment (noting that Rule 37(e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information"); *Tripp v. Walmart, Inc.*, 2023 WL 399764, at *8 (M.D. Fla. Jan. 25, 2023) ("Rule 37(e)(2) applies regardless of whether [a c]ourt finds prejudice[.]") (citing Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment; *Nationwide Life Ins. Co. v. Betzer*, 2019 WL 5700288, at *10 (M.D. Fla. Oct. 28, 2019) (commenting that a finding of prejudice is not necessary for a finding of an intent to deprive); *O'Berry*

13

*v. Turner*, 2016 WL 1700403, at \*4 (M.D. Ga. Apr. 27, 2016) (stating that subsection (e)(2) is not predicated upon "a finding that the opposing party was prejudiced by the failure to preserve [ESI]" and that "[p]rejudice is inferred by [a] court's finding of intent").  In other words, subsection (e)(2) may apply even if subsection (e)(1) does not, and vice versa.

B.

Before analyzing Rule 37(e) in the context of this case, it is important to emphasize initially the scope of the ESI at issue here.  Pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense* and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1) (emphasis added).  This means Swift was entitled during the discovery period to seek any information that "appear[ed to be] reasonably calculated to lead to the discovery of admissible evidence'" concerning its defense, provided it was proportional.  *Akridge v. Alfa Mutual Ins. Co.*, 1 F. 4th 1271, 1276 (11th Cir. 2021) (quoting *Degen v. U.S.*, 517 U.S. 820, 825–26 (1996) and citing Fed. R. Civ. P. 26(b)(1)).[8]  Despite Doe's suggestion otherwise, this included text messages not only between her and Willis, but between her and Butler, Wells, and Houston as long as they were pertinent to Swift's defense.

---

[8] *Cf.* Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendment (stating that the "provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence'" has been deleted because the phrase "reasonably calculated" could "swallow any other limitation on the scope of discovery" and is therefore too broad).

It likewise bears mentioning at the outset that according to the information and testimony adduced in connection with the evidentiary hearing, the amount of ESI on Doe's iPhone 6s seems to have been substantial.  (Doc. 160 at 43–44).  And it can be fairly assumed from everyday experience in this modern world that this ESI included stored photographs, notes, recorded conversations, and information from various applications, in addition to text messages and other communications.  *Id.* at 198–99.

Finally, in applying the provisions of Rule 37(e) to the facts of this lawsuit, the Court views Doe and her attorney(s) as one.  *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc., et al.*, 337 F.R.D. 47, 69 n.19 (S.D.N.Y. 2020) (stating that "[a]lthough the misconduct [at issue] resulted, in part, from the failure of the [defendants'] litigation counsel . . . to take effective steps to ensure that relevant ESI would be preserved against just such mishaps, it is well-settled that '[a] litigant chooses counsel at his peril'") (citation omitted).  As a result, Doe cannot avoid the consequences of any improper spoliation of evidence that was on her iPhone 6s simply by "blaming the underlying events on [her] counsel."  *Id.* (quoting *New York State Nat. Org. for Women v. Cuomo*, 1997 WL 671610, at *5 (S.D.N.Y. Oct. 28, 1997) ("[T]he acts and omissions of counsel are generally attributed to the client.")).

With this backdrop in mind, the Court turns to the first of Rule 37(e)'s four threshold elements—whether Doe had a duty to preserve ESI when she threw away her iPhone 6s.  It is well settled that the "the duty to preserve arises when litigation is pending or reasonably foreseeable at the time of the alleged spoliation."  *Ala. Aircraft Indus.*, 2022 WL 433457, at *14 (internal quotation marks and citation omitted).

15

Applying that principle here, it is clear that Doe was obligated to preserve her iPhone 6s and the ESI it contained at least as of the time frame in April 2021 when she hired Levin and sent the letter to Swift instructing Swift not to destroy any evidence pertinent to the matter.  (Doc. 144-18).  Although it cannot be discerned precisely when Doe subsequently disposed of her iPhone 6s, there can be little dispute it was after July 28, 2022, given that the Tracfone records indicate this device was being used to make calls and to send text messages up until that date.  (Doc. 160 at 163).

The next element for the Court to consider is whether the ESI associated with the iPhone 6s was lost or destroyed.  This element can be readily dispatched.  It is uncontested that Doe discarded her iPhone 6s (which she purports was already damaged at the time), and neither party has suggested a mechanism for restoring the entirety of the relevant data on that device.  As such, the Court finds that the ESI in question was lost or destroyed.

The third factor the Court must address is whether Doe took reasonable steps to preserve the ESI on her iPhone 6s.  Rule 37(e) does not specify what constitutes "reasonable steps" for purposes of preservation.  The advisory committee explains, however, that such efforts do "not call for perfection."  Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.  Rather, it instructs that a "court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation." *Id.*

16

Here, while it seems Doe is not a sophisticated litigant, she admitted that she knew based on the directives from her lawyer not to dispose of any potential evidence at the time she got rid of her iPhone 6s. (Doc. 160 at 166). Indeed, as discussed earlier, she testified that she was told by her attorney "[d]on't delete text messages[ and] don't throw away evidence." (Doc. 160 at 150). Thus, by discarding her iPhone 6s instead of retaining all of its ESI, Doe did not engage in reasonable efforts to preserve that information.

In an effort to avoid this conclusion, Doe posits that she satisfied her preservation duties before filing suit by taking screenshots of "*all* the text messages responsive to Swift's discovery requests that were in her possession" and then turning them over to Swift. (Doc. 157 at 8) (emphasis added). In making this assertion, Doe appears to rely on her testimony at the evidentiary hearing that she did not object to any of Swift's documents demands.[9] *Id.* (citing Doc. 160 at 160–61).

---

[9] Doe testified, in pertinent part, as follows:
    Q.  And you reviewed those requests that Swift served; is that right?
    A.  I haven't refused any request.
    Q.  So you never reviewed Swift's requests?
    A.  Whatever you told me to give, that's what I gave.
    Q.  So my question to you is, did you, in connection with collecting information for this case, ever look at your Samsung or Motorola phones?
    A.  No—after I gave the documents to you-all?  Is that what you're saying, right?
    Q.  Yes.
    A.  Okay.  After I gave the documents to you-all, no, I don't think so.
    Q.  Okay.  And when you say gave the documents to you-all, you're referring to the screen shots that you took in April of 2021; is that right?
    A.  The documents that I gave to my lawyer, yes.
    Q.  And those would be the screen shots that you took from your iPhone in 2021?
    A.  Yes.
(Doc. 160 at 160–61).

Doe's argument is unavailing.  Doe's claim that she did not resist any of Swift's requests for production must be viewed in the wider context of her seeming concession that she did not collect any additional messages from her iPhone 6s after April 2021, *id.*, at 154, and that she did not take screenshots of messages with people other than Willis because she believed it "wasn't . . . required," *id.* at 153.  And putting aside the possible recoverability of Willis's text messages that Doe found upsetting and deleted prior to retaining Levin in April 2021, her argument also ignores the breadth of the discoverable information in this case.  As noted above, that information includes not only Doe's communications with Willis that she decided to keep, but her communications with Butler, Wells, and Houston as well; other pertinent messages and information on her iPhone 6s relating to Willis; and those relevant messages she sent and/or received after April 2021.  (Doc. 144-4 at 4–5, 64, 66).

Thus, notwithstanding Doe's protestations to the contrary, her April 2021 collection of her messages with Willis before she initiated the lawsuit and before Swift had served her with its discovery requests did not amount to "reasonable steps" to safeguard all ESI that "should have been preserved in the anticipation or conduct of litigation[.]"  Fed. R. Civ. P. 37(e); *see also* (Doc. 157 at 8).  Doe could not simply engage in the unilateral exercise of selecting the evidence from her iPhone 6s which she deemed to be pertinent to the action and then later discard that device.  *Ahrens Enters., Inc. v. Winning*, 2019 WL 12520080, at *4 (S.D. Fla. Apr. 18, 2019) (finding that a party did not meet his reasonable preservation obligations where he deleted emails prior to a forensic review because "[it] was not for [him] to unilaterally decide

what might or might not be relevant"); *Paisley Park Enter., Inc. v. Boxill*, 330 F.R.D. 226, 235 (D. Minn. 2019) ("[T]he [defendants] do not get to select what evidence they want to produce, or from what sources.  They must produce all responsive documents or seek relief from the court.") (citing Fed. R. Civ. P. 26(c)).

The final element that the Court must analyze is whether Doe's iPhone 6s was the only source from which the information at issue could be retrieved after it was lost. Because ESI "often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."  Fed. R. Civ. P. 37, advisory committee notes to 2015 amendments.  Accordingly, "Rule 37(e) precludes any sanctions or curative measures if the ESI can be restored or replaced through additional discovery."  *Living Color Enters., Inc. v. New Era Aquacultures, Ltd.*, 2016 WL 1105297, at *5 (S.D. Fla. Mar. 22, 2016).

As for which party bears the burden on this question, some courts have taken the position that a Rule 37(e) movant typically bears the burden on spoliation issues like this one, *see, e.g.*, *Scarpati v. Fla. Highway Safety & Motor Vehicles*, 2021 WL 7501822, at *5 (M.D. Fla. Nov. 17, 2021) (citations omitted), while other courts have adopted a more nuanced view, *see, e.g.*, *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 979 (N.D. Ill. 2021).  In *DR Distributors*, for example, the court observed that "burdens of proof generally fall on the party with better access to the information" and expressed reservations about placing the onus on the movant to show that lost ESI could not be restored or replaced where the party possessing the ESI "unquestionably destroyed" it.  *Id.* (citing *Schaffer v. Weast*, 546 U.S. 49, 60 (2005)).

The Court is similarly concerned with requiring Swift to shoulder the burden of demonstrating that the pertinent ESI on Doe's iPhone 6s could not be restored or recovered.  This is especially true since Doe essentially acknowledges that she never searched her iPhone 6s for ESI responsive to Swift's discovery requests despite having had an ample opportunity to do so, and then ultimately got rid of that device despite her lawyer having told her not to throw away any evidence.  Further, Doe has apparently not engaged in any meaningful attempts to facilitate the securing of the lost ESI, whether through Willis or other third parties.

Even assuming *arguendo* that Swift bears the burden on this element, the Court finds based upon the information and evidence before it that Swift has met its burden given the circumstances presented.  It appears, for example, that while Swift did not serve Willis with a formal discovery request for his text messages with Doe, Willis testified at his deposition that he no longer had those messages, although he did acknowledge he did not specifically search for them.  (Doc 67-4 at 6).  Swift also apparently issued a subpoena duces tecum to Butler in connection his deposition, but Swift did not receive any text messages or other documents from Butler in the process. (Doc. 126 at 18).

Regardless of these efforts, it seems from the subpoenaed Tracfone documents and other evidence of record that Doe's iPhone 6s contained thousands of messages. Although some of these messages may theoretically have been obtainable from Willis and others, Swift adequately shows that other ESI may have existed on the device which is now gone.  This showing is sufficient for the Court to proceed to the next

stage of the Rule 37 analysis. *See Living Color*, 2016 WL 1105297, at *5 (finding that even where the "great majority" of missing text messages were provided by another party and therefore were not "lost," it was appropriate to continue the Rule 37(e) analysis since "it appear[ed] that at least some of the text messages at issue were not replaced"); *Laub v. Horbaczewski*, 2020 WL 9066078, at *4 (C.D. Cal. July 22, 2020) (agreeing with the defendants that the plaintiff's "destruction of his iPhone, without first backing up the information on it, likely resulted in the loss of ESI—namely, text conversations between [the p]laintiff . . . and third parties—and [that] those conversations cannot now be restored or replaced") (citation omitted); *In re Skanska*, 340 F.R.D. 180, 187 (N.D. Fla. 2021) ("At best, [the defendant] can merely represent that *some* of the text messages . . . were produced from other custodians. Thus, 'it will never be known whether such information would or would not have been cumulative because it is impossible to know what it was or to whom it may have been communicated.'") (quoting *Paisley Park*, 330 F.R.D. at 235).

As one court explained in an analogous situation:

[The defendant's] argument that [the plaintiff] can restore or replace any lost ESI by downloading it directly from [the plaintiff's] servers or getting emails from other non-party sources who were included on the emails completely misses the point. While [the plaintiff] could conceivably attempt to piece together the larger puzzle of what might have been on [the defendant's] thumb drive or in his email accounts through other sources, [the plaintiff] can never know for sure without direct access to these ESI sources.

*Ahrens*, 2019 WL 12520080, at *4.

21

Doe's bid to shift the blame to Swift for not seeking additional discovery from her after receiving her screenshot production in January 2022 is unconvincing. Doe argues in this regard that Swift "knew there were missing text messages in April 2022" when it received the first batch of Tracfone materials yet "took no steps to ask for the [iPhone 6s] before [Doe's] deposition. . . ." (Doc. 157 at 8). The fatal flaw in this contention is that Swift does not bear the burden of preserving ESI on Doe's behalf. *Paisley Park*, 330 F.R.D. at 234 ("Rule 37 requires the party from whom the information is sought to ensure they are taking reasonable steps to preserve evidence. The rule does not require that the requesting party issue a document preservation letter identifying all types of ESI that it might seek in the future. That burden rests with the preserving party.") (internal citation omitted).

## C.

Having found that Swift satisfies the threshold elements of Rule 37(e), the Court now turns to whether Swift establishes the criteria set forth in subsections (e)(1) and/or (e)(2). Fed. R. Civ. P. 37(e); *Title Cap. Mgmt.*, 2017 WL 5953428, at *3. Since Swift, as the moving party, leads with subsection (e)(2), so too does the Court.

Subsection (e)(2) "authorizes courts to use specified and very severe measures to address or deter failures to preserve [ESI], but only on finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment. Thus, it is not enough for a Rule 37 movant to demonstrate that the spoliating party was negligent or even grossly negligent. *Id.* That said, a showing of

bad faith may be adequate to trigger the remedies available under subsection (e)(2). *See Ala. Aircraft Indus.*, 2022 WL 433457, at *15 (observing that Rule 37(e) is "less clear . . . in providing affirmative guidance as to what sort of evidence would support a finding of an intent to deprive" but proceeding "by asking whether the district court clearly erred in finding that [the defendant] acted with bad faith when it destroyed the ESI"); *Skanska*, 340 F.R.D. at 188 (equating an intent to deprive with bad faith); *cf. Scrap King LLC v. Stericycle, Inc.*, 2022 WL 18495259, at *11 (M.D. Fla. Dec. 20, 2022) (noting that "it is unclear whether the Eleventh Circuit considers bad faith synonymous with an intent to deprive" and applying both standards) (citing *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018)).

If a court determines there was an intent to deprive, it may employ any of the sanctions listed in subsection (e)(2). Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment. These sanctions include the court "presum[ing] that the lost information was unfavorable to the [spoliating] party," "instruct[ing] the jury that it may or must presume the information was unfavorable to the [spoliating] party," or "dismiss[ing] the action or enter[ing] a default judgment." Fed. R. Civ. P. 37(e).

A court need not adopt any of these measures, however. *Tripp*, 2023 WL 399764, at *3 n.5 (quoting Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment). All that is required is that the chosen sanction "'fit the wrong[.]'" *Id.* (quoting Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment). The Eleventh Circuit has cautioned though that "the most severe" of the available

sanctions under subdivision (e)(2)—dismissal of an action—should be employed only where there is a demonstration of bad faith and where lesser measures are inadequate. *Flury*, 427 F.3d at 944.

With respect to Rule 37(e)(1), a court assesses "prejudice from the loss of information," which necessarily includes ascertaining the information's importance in the litigation. Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment; *Nationwide*, 2019 WL 5700288, at *10 (noting that the "[i]mportant questions" for the Rule 37(e)(1) prejudice inquiry include "the scope of the prejudice and the importance of the spoliated ESI"). There is a disagreement, however, as to what actually constitutes "prejudice" under Rule 37(e)(1). Some courts in the Eleventh Circuit, for example, "have suggested that a non-spoliating party suffers 'prejudice' under Rule 37(e) if the unavailable ESI would have helped evaluate the merits of its positions, regardless of whether the ESI would be favorable [to] its case." *Wilson*, 2022 WL 3273718, at *7 (citations omitted). Other courts, by contrast, insist that the moving party demonstrate the spoliated evidence "'would [have] affirmatively support[ed] the movant's claim.'" *Id.* at *7 n.11 (citation omitted).

Irrespective of what standard is employed, it is well accepted that discerning what ESI has been lost and the possible probative value of that information can be quite challenging. As a result, neither party is automatically tasked with the burden of proof on the issue of prejudice under Rule 37(e)(1). As the Advisory Committee explains:

24

> Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair.  In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations.

Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.

Consistent with this reasoning, Rule 37 affords the Court "discretion to determine how best to assess prejudice in particular cases."  *Id.*  This approach reflects a recognition that "[t]ypically, only the spoliator knows how much prejudice has been caused by the destruction."  *Nationwide*, 2019 WL 5700288, at *10 (citation omitted).

Even where sanctions under Rule 37(e)(1) are appropriate, they may be "no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.  Such sanctions may include

> forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies.

*Id.*

Finally, it bears highlighting that deciding whether a movant has suffered prejudice under Rule 37(e)(1) can sometimes "overlap[ ]" with determining whether there was an intent to deprive under Rule 37(e)(2).  *Nationwide*, 2019 WL 5700288, at *10.  By way of example, a finding of an intent to deprive can support "an inference

25

that the lost information was unfavorable to the [spoliating] party" and "also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment. Not surprisingly given the interconnectedness of the Rule 37(e)(1) and (e)(2) inquiries, the same set of facts can oftentimes be used to satisfy both the intent to deprive and the prejudice requirements. *See Nationwide*, 2019 WL 5700288, at *11–14 (relying upon similar evidence to establish both prejudice and an intent to deprive).

In this case, Swift contends that Doe acted with the intent to deprive Swift of evidence on her iPhone 6s and that, in accordance with Rule 37(e)(2), the Court should therefore either dismiss the case or instruct the jury that it "*must* presume [Doe's] cell phone data is unfavorable to her substantive claims." (Doc. 158 at 31). As for prejudice under Rule 37(e)(1), Swift posits that Doe's "failure to preserve her cell phone, conduct a reasonable search of it, and her deception surrounding these circumstances, alone, create an inference that the evidence on the cell phone would have been favorable to Swift's case." (Doc. 158 at 32). After careful review, the Court finds that Swift's arguments have merit, at least in part.

Beginning with the intent to deprive, the record shows Doe understood that her iPhone 6s likely contained pertinent ESI, such as text messages, given that she collected some of those communications prior to filing suit. The record also evidences that Doe caused the remaining ESI on her iPhone 6s to be permanently lost. As noted above in this regard, she testified at her deposition that she dropped this device "multiple times," such that there was eventually no point in "salvaging" it. (Doc. 144-

17).  Thus, despite describing more than one instance of potential harm to the iPhone 6s, Doe apparently took no steps to preserve the bulk of the ESI on that device.

Additionally, when Doe responded to Swift's discovery requests by producing the April 2021 screenshots, she did so without indicating that any ESI was being withheld and seemingly without ever searching her iPhone 6s or her other devices for information and items responsive to Swift's discovery requests.  Moreover, Doe's disclosure of the text messages between herself and Willis were incomplete.  As referenced previously, the screenshot images did not include images or data files sent with some of these communications, let alone metadata or the conveyance, tracking, and time and date information related to the individual messages.  (Doc. 160 at 31–36).

Beyond this evidence, there appears to be a substantial discrepancy between the volume of messages exchanged between Doe and Willis and the more limited number of messages Doe turned over to Swift.  According to Swift, the Tracfone records reveal that Doe and Willis communicated via SMS text messages on at least 313 occasions.  (Doc. 144-14); (Doc. 158 at 4).  Doe, however, only produced screenshots of 206 messages with Willis.  (Doc. 160 at 36); (Doc. 158 at 8); (Doc. 144-16).  Of the total 106 missing messages, 21 were inbound messages from Willis and 86 were outbound messages from Doe.  (Doc. 160 at 52).

In an effort to justify this significant disparity, Doe points to her declaration submitted prior to oral argument, in which she asserted that she deleted some messages

sent by Willis which upset her before her preservation duty was triggered.  (Doc. 157 at 2).  There are a couple of problems with this claim.

To start, Doe failed to address this issue adequately at the evidentiary hearing despite the Court's explicit instruction in advance of the hearing that the parties "present evidence pertinent to the issues raised in" Swift's motion and at oral argument.  (Doc. 103).  Instead, all that Doe offered on the matter at the hearing was testimony from the expert witnesses, in which they referenced Doe's attestations in her declaration regarding her deletion of Willis's texts.  (Doc. 160 at 55–56, 180; Doc. 67-5).  This attempt by Doe to use other witnesses to address her deletion of communications from her iPhone 6s without testifying about it herself was unpersuasive.

Even setting aside this deficiency, Doe's claim does not account for why most of the missing messages are those she sent to Willis.[10]  As a result, the Court is left without any meaningful explanation as to why so many messages Doe transmitted to

---

[10] The parties offer competing theories as to the number of messages exchanged between Doe and Willis.  Doe's expert, for example, endeavored to explain the wide variance between the amount of messages produced and those reflected in the Tracfone records by asserting that text messages over 160 characters may show up as multiple messages in Tracfone's call detail records.  (Doc. 160 at 185, 188).  Doe also suggests in her post-hearing submission—without citation to any supporting evidence—that Swift's calculation of the total sum of messages between herself and Willis incorrectly included a second phone number which Willis did not use.  (Doc. 157 at 8).  For its part, Swift contends that Doe and Willis may have exchanged even more messages than those captured by Tracfone by using iMessage, which Tracfone does not document.  (Doc. 160 at 40–42).  The Court need not resolve this factual dispute because the evidence demonstrates that Doe did not produce a considerable number of the text messages she sent to or received from Willis.

Willis were not disclosed. And without Doe's iPhone 6s, Swift is without a mechanism to sufficiently address the matter.

Importantly, Swift raised some of these issues in May 2022 when Doe's iPhone 6s was apparently still in working order, yet Doe did not supplement her response. (Doc. 144-19). Rather, upon pressure from Swift's counsel to confirm the completeness of her production, Doe asserted two months later, in mid-July 2022, that she "no longer [had] possession of the [iPhone 6s]. . . ."[11] (Doc. 144-5). According to the Tracfone records, this was not true, as those records evidence that Doe used her iPhone 6s to send text messages and make calls for roughly another two weeks, up until on or about July 28, 2022.[12] (Doc. 160 at 22). As noted above, this was approximately one week before Doe's deposition, where—it is fair to assume—she knew she would likely be asked about the contents of her iPhone 6s, including her text messages with Willis and others.

As importantly, as discussed earlier, Doe—by her own admission—was aware when she discarded her iPhone 6s in advance of her deposition that she was obligated

---

[11] In her declaration submitted in advance of oral argument, Doe attributed this representation to a simple misunderstanding between her and her lawyer, averring that when her attorney asked her about the "phone number I had when I was at Swift[,] I told him I did not have it anymore and I had gotten rid of it." (Doc. 67-5). Doe, however, did not testify about this purported misunderstanding at the evidentiary hearing, nor did she raise it in her proposed findings of fact and conclusions of law. (Doc. 157). As a result, she has waived it. (Docs. 103, 145). And even if there was a miscommunication between Doe and her attorney, that would not explain why she apparently prevaricated about the matter at her deposition, which the Court discusses below.

[12] Doe stated in her declaration that she allowed her children to use her iPhone 6s to play games. (Doc. 67-5). Again, Doe did not raise this issue at the evidentiary hearing and so she has waived it. *See* (Docs. 103, 145). In any event, this assertion does not explain why the iPhone 6s was also used to communicate with others during this time frame.

to keep all potential evidence. *Id.* at 166. Indeed, as further explained above, she acknowledged that she was expressly told by her counsel not to "delete text messages" or "throw away evidence." *Id.* at 150.

Doe's testimony at her deposition regarding the timing and circumstances of her disposal of her iPhone 6s does her no favors. Upon examination about the device's status at the time of the deposition in early August 2022, Doe at least strongly implied that she threw the iPhone 6s away in or around April 2021 when she purchased the Motorola device. (Doc. 144-17). Specifically, as mentioned previously, Doe first claimed it was after the iPhone 6s was purportedly rendered unsalvageable due to being dropped "multiple times" that she "had to buy another one." *Id.* She then testified shortly thereafter that she purchased the Motorola device "probably [in the] middle of [2021]." *Id.* And even though the Tracfone records revealed she had been using the iPhone 6s as recently as a week before the deposition, Doe seemingly struggled to recall moments later whether she was represented by counsel at the time she disposed of the iPhone 6s, even though she retained her lawyer in mid-April 2021. *Id.* ("No, no -- yes, I did. I had my lawyer, because I had -- yes, I think I had my lawyer at that time. I did. I did."). In light of this testimony, there is reason to question the veracity of Doe's recounting of these events. (Doc. 157 at 12).

As for prejudice, it bears stating at the outset that this is not a situation where "the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties." Fed. R. Civ. P. 37(e), advisory committee notes to

2015 amendment. Rather, only Doe knows with whom she exchanged responsive messages and what those communications contained. Significantly, Doe does not establish that any other messages which may have existed on her iPhone 6s were irrelevant or nonresponsive to Swift's requests, nor does she identify any individuals other than Willis who may possess responsive communications. Likewise, Doe does not address whether any pertinent ESI may be located on her Motorola or Samsung devices. Instead, she simply contends that Swift failed to meet its burden of seeking these communications from others, without adequately designating who Swift should have subpoenaed. (Doc. 157 at 10) (arguing that "Swift further implied there were communications between other individuals that were not produced. Besides the named [p]arties and Stanley Butler, Swift did not provide any evidence as to who those other individuals are").

> For its part, Swift argues:

> The ESI lost in this case is critical evidence of [Doe's] claims and her credibility. A single text message alone could have been "smoking gun" evidence, reflecting [Doe's] admission she was in a voluntary relationship with Willis (which she has denied), [a] picture or communication showing [Doe] and Willis socialized outside of work (which she has denied), or communications by [Doe] reflecting any jealousy for Willis' believed paramour Houston whom she contacted just days before she retained counsel.

(Doc. 158 at 25–26).

Swift further contends that Doe identified her cousin, Butler, as the person to whom she first reported Willis's alleged assault, yet she did not produce any text

messages to or from Butler.  *Id.* at 10–11; (Doc. 160 at 153–156).  According to Swift, the Tracfone records show that Doe texted with Butler only a handful of times before April 2021 but that, after retaining her lawyer, she communicated more frequently with Butler until Swift served its discovery requests in December 2021, at which point their messages decreased again.[13]  (Doc. 158 at 10–11).

Swift additionally explains that, aside from Butler, Doe identified other individuals who had knowledge of her claims, including Houston (the woman who Doe apparently believed Willis began dating in January 2021) and Wells (the former Swift employee who Doe first began communicating with in March 2021, and who shared with Doe rumors pertaining to Willis, including complaints previously made about him).  (Doc. 158 at 10).  Swift asserts as well that although Doe has not produced any communications with Wells or Houston, the Tracfone records evidence that she exchanged messages with Wells before and during the litigation and with Houston immediately before hiring counsel.  (Doc. 144-15); (Doc. 158 at 11).

### D.

As described above, Swift tenders "plausible, concrete suggestions as to what [the destroyed] evidence might have been" that could have bolstered its defense. *Nationwide*, 2019 WL 5700288, at *10 (internal quotation marks and citation omitted and alterations in the original).  As such, Swift demonstrates prejudice.  *Classic Soft*

---

[13] In particular, Swift contends that the Tracfone records reveal five messages exchanged between Doe and Butler before April 9, 2021; fifty-three messages exchanged between Doe and Butler from April 9, 2021, to December 14, 2021; and eight messages exchanged between Doe and Butler from December 14, 2021, to September 21, 2022.  (Doc. 158 at 10–11).

*Trim, Inc. v. Albert*, 2021 WL 720435, at *6 (M.D. Fla. Feb. 10, 2021) ("'Prejudice exists where documents that are relevant to a claim are unavailable and the moving party has come forward with a plausible, good faith suggestion as to what the evidence might have been.'") (quoting *Goldrich v. City of Jersey City*, 2018 WL 4492931, at *10 (D.N.J. July 25, 2018)) (internal alternations omitted).[14]

Whether Swift demonstrates an intent to deprive by Doe presents a closer question. Although Swift has marshaled a fair amount of evidence on this issue, the Court cannot say with sufficient confidence that Swift meets its burden. By the Court's lights, the better approach given the record before it is to allow the parties to present evidence and to make argument to the jury relative to the lost ESI and for the Court to provide the jury with instructions to assist its evaluation of such evidence. Several considerations counsel in favor of this approach.

As an initial matter, presenting evidence to the jury regarding the missing text messages and other ESI "allow[s t]he jury to consider the loss of that evidence, and the circumstances under which it was lost, in evaluating witness credibility and making

---

[14] In determining Swift's burden relative to the prejudice inquiry, the Court has taken into account, among other things, the volume of potentially relevant ESI likely contained on Doe's iPhone 6s, Doe's failure to fully search her iPhone 6s for responsive information and data prior to destroying it, Doe's inability to provide either Swift or the Court with sufficient assurance that no additional responsive ESI exists, and Doe's lack of cooperation with Swift's request for a review of her other devices. *See Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019) (finding prejudice where the moving party demonstrated that the existing evidence plausibly suggested that the spoliated ESI could support its case and the opposing side, who was "the only party with actual knowledge as to what was in [the spoliated] emails[,] . . . [came] forward with nothing but legal argument, premised almost entirely on [the moving party's] inability to prove" the content of the documents with certainty).

other factual determinations." *Charlestown Cap. Advisors,* 337 F.R.D. at 68–69 (citation omitted).   It additionally "ensure[s] that the [jury] will have the full context for the [potential] evidentiary imbalance that [may] become apparent at trial, which is itself relevant evidence going to the parties' credibility and other factual issues." *Id.* (internal quotation marks and citation omitted).

This approach also finds support in the advisory committee notes as both a curative measure for prejudice under Rule 37(e)(1) and as a mechanism for resolving the intent to deprive issue.   Fed. R. Civ. P. 37, advisory committee notes to 2015 amendment.  As the Advisory Committee explains:

> [S]ubdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision. These measures, which would not involve instructing a jury it may draw an adverse inference from loss of information, would be available under subdivision (e)(1) if no greater than necessary to cure prejudice.
>
> * * *
>
> If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation.  If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.

*Id.*[15]

---

[15] The "precise scope of the spoliation evidence to be permitted at trial and . . . any related jury instructions [to be crafted based] on a full evidentiary record" are best left to the presiding District

The court's recent decision in *Tripp* is instructive in this regard.  In that case, the court found that significant questions surrounded the defendants' alleged spoliation of a surveillance video that contained footage relevant to an accident at issue in the case.  2023 WL 399764, at *8–9.  The court also found that whether the defendants acted with an intent to deprive involved "multiple," "unanswered" factual questions of "import" and that the matter was thus better left to the jury.  *Id.* at *8.  As a result, the court ruled that the moving party would be "required to establish a foundation of facts demonstrating [the d]efendants' spoliation" and that "the jury instructions . . . [would] permit the jury to presume that the lost video footage constituted unfavorable evidence to [the d]efendants [if] the jury first [concluded] that [the d]efendants acted with an intent to deprive [the p]laintiff of the footages' use in [the] litigation."  *Id.* at *9.

The Court finds that along with the above approach, a monetary sanction against Doe is appropriate under Rule 37(e)(1) as well.  Although neither Rule 37(e)(1) nor 37(e)(2) expressly authorizes such a remedy, "Rule 37(e)(1) allows [a c]ourt to impose any measures necessary to cure the prejudice resulting from spoliation."  *Paisley*, 330 F.R.D. at 237–38 (explaining that "[t]he range of sanctions available to [a

---

Judge.  *Charlestown Cap. Advisors*, 337 F.R.D. at 69; *see also Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *17 (S.D.N.Y. Mar. 12, 2018) (permitting the injured party to seek a jury instruction, in a form to be approved by the district judge, as a sanction under Rule 37(e)(1)).  The Court notes only at this juncture that the instruction proposed by Swift appears to be somewhat broad. *See Wilson*, 2022 WL 3273718, at *8 (finding a "vague[ ]" request for the court to "order . . . that a rebuttable presumption exists that the destroyed evidence was unfavorable to [the spoliating party] or whatever relief the [c]ourt deems just and proper" to be an inadequate suggestion from which the court could prepare a proper sanction) (internal quotation marks and citation omitted).

c]ourt is 'quite broad' and '[m]uch is left to [a] court's discretion'") (quoting Fed. R. Civ. P. 37, advisory committee notes to 2015 amendment).  Courts have accordingly not hesitated to impose monetary sanctions under Rule 37(e)(1) where, as here, there was a justification to do so.  *See, e.g.*, *Tripp*, 2023 WL 399764, at *9 (directing that the alleged spoliating party pay the moving party "for the time and resources expended by [the moving party] in bringing [the] spoliation issues before the [c]ourt and otherwise addressing them"); *Paisley*, 330 F.R.D. at 237–38 (noting that "[m]any courts have imposed monetary sanctions under Rule 37(e)(1)") (citing *Spencer v. Lunada Bay Boys*, 2018 WL 839862, *1 (C.D. Cal. Feb. 12, 2018) (collecting cases)); *Skanska*, 340 F.R.D. at 191 (awarding the movant the fees and costs incurred in prosecuting a spoliation motion in addition to an adverse inference instruction); *Nationwide*, 2019 WL 5700288, at *14 (finding the moving party was entitled to reasonable attorney's fees and costs "for the filing of both the motion for sanctions and the motion to compel") (collecting cases).

The Court defers ruling on whether, and the extent to which, such monetary sanctions should be apportioned between Doe and her attorney(s).  *Charlestown Cap. Advisors*, 337 F.R.D. at 69 n.19 (explaining that "'[t]he [c]ourt has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel'") (quoting *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2019 WL 4727537, at *20 (S.D.N.Y. Sept. 26, 2019)).  That issue has not been fully briefed at this point and is therefore not ripe for the Court's resolution.

36

IV.

The final item before the Court is Swift's request for the imposition of monetary sanctions against Doe pursuant to Rule 26 and/or the Court's inherent authority. Having found that such sanctions are warranted under Rule 37, the Court need not address this request.

V.

In light of the above, it is hereby ORDERED:

1.      Swift's motion for sanctions against Doe (Doc. 56) is granted in part and denied in part as set forth herein.

2.      No later than May 12, 2023, Swift shall provide Doe with an accounting of the reasonable attorneys' fees and costs it incurred in making its motion for sanctions against Doe.

3.      No later than May 26, 2023, the parties shall confer in good faith either in person, over the phone, or via videoconference as to any disagreements they may have on the question of fees and costs.

4.      No later than June 2, 2023, the parties shall file a notice advising the Court of the results of their conferral efforts, including any areas that remain in dispute. If necessary and appropriate, the Court will thereafter schedule the matter for a status conference and/or hearing.

SO ORDERED in Tampa, Florida, this 12th day of April 2023.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record